# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Tina M. Reynolds, | No. 9:13-cv-01551 |
| Plaintiff, | **ORDER** |
| vs. | |
| United States of America; John Doe, *Manufacturer of Walk-In Dairy Cooler*; John Doe, *Seller of Walk-In Dairy Cooler*; John Doe, *Maintenance Company of Walk-In Cooler*, | |
| Defendants. | |

This matter is before the Court on the Government's partial motion to dismiss for lack of subject matter jurisdiction. (Dkt. No. 45). For the reasons stated below, the motion is granted in part and denied in part.

## I. Background

Plaintiff alleges that on June 9, 2010, she slipped and fell inside the walk-in dairy cooler at the Marine Corp Recruit Depot Commissary ("the Commissary") located at 407 Wade Boulevard, Parris Island, South Carolina. (Dkt. No. 1 at 2, 4). She alleges that she suffered physical injury and pain as a result of her fall. (*Id.* at 4). Plaintiff brought this action against the Government and John Does, alleging negligence.[1] (*Id.* at 5-9). Among other things, Plaintiff alleges that the Government was negligent in its design and construction of the Commissary's walk-in cooler, including the flooring and lighting design and construction, and in its failure to

---

[1] Defendant Mid-South Industries was dismissed by stipulation of the parties. (Dkt. No. 29). Counts II and III of the Complaint were also dismissed by stipulation of the parties. (Dkt. No. 56).

use mats or slip resistant materials to cover the walk-in cooler floor. (*Id.* at 5-7). The Government contends that the Court lacks subject matter jurisdiction over these particular claims under the discretionary function exception to the Federal Tort Claims Act (FTCA).[2] (Dkt. No. 45 at 9-12). Plaintiff also alleges that the Government was negligent in its failure to properly and timely inspect the floor and lighting in the walk-in dairy cooler. (Dkt. No. 1 at 6). The Government contends that the Court lacks subject matter jurisdiction over this claim under the independent contractor exception to the FTCA. (Dkt. No. 45 at 13-17). Plaintiff has filed a response to the Government's motion, (Dkt. No. 52), and the Government has filed a reply, (Dkt. No. 59).

## **II. Rule 12(b)(1) Motions**

"Ordinarily, a defendant may challenge the existence of subject matter jurisdiction in one of two ways: (1) by contending that a complaint fails to allege facts upon which subject matter jurisdiction can be based (a 'facial challenge') or (2) by contending that the jurisdictional allegations made in the complaint are not true (a 'factual challenge'). *Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1767 (2014). In a facial challenge, "all alleged facts are taken as true and the motion will be denied if the complaint alleges facts that, if proven, would be sufficient to sustain jurisdiction." *Id.* "In a factual challenge, a trial court may . . . go beyond the allegations of the complaint and in an evidentiary hearing determine

---

[2] In the introduction to its brief, the Government states that Plaintiff's claims alleging a failure to comply with "standards, rules, regulations," etc. and Plaintiff's claims alleging "the placement of an unsafe walk-in cooler into the stream of commerce" are barred by the discretionary function exception. (Dkt. No. 45 at 3). However, it does not address or otherwise reference these claims in its argument. (*See* Dkt. No. 45). Thus, the Court does not address them in this Order.

if there are facts to support the jurisdictional allegations." *Id.* (internal quotations omitted). However, even with a factual challenge to jurisdiction, where the court considers evidence outside the pleadings, a Rule 12(b)(1) motion is not converted to a motion for summary judgment. *See In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014) ("When a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."). It is only "in cases where the jurisdictional facts are 'inextricably intertwined' with those central to the merits of the dispute," that the court assumes jurisdiction and resolves the case on the merits, such as on a motion for summary judgment. *Lutfi*, 527 F. App'x at 241.

Here, the Government does not contest the factual allegations of the Complaint but argues that the alleged claims fall within the ambit of the discretionary function exception or independent contractor exception to the FTCA. Thus, the Government's motion is in the nature of a facial challenge, and the Court assumes the facts in the Complaint are true. The Government and Plaintiff have both submitted additional evidence in support of their positions. This evidence does not conflict with the Complaint's factual allegations, neither party has objected to its consideration, and the Court considers it to the extent relevant.[3]

---

[3] The Court notes that discovery commenced in this action over two (2) years ago, and the parties have had ample time to obtain relevant evidence. (*See* Dkt. No. 8).

### III. Discretionary Function Exception

**A. Legal Standard**

"As a general matter, the United States is immune from suit unless it waives that immunity." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341 (4th Cir. 2014), *cert. denied sub nom. KBR, Inc. v. Metzgar*, 135 S. Ct. 1153 (2015). The FTCA waives the sovereign immunity of the United States with respect to civil actions in federal court for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The FTCA's waiver of immunity is subject to certain exceptions, however. *See* 28 U.S.C. § 2680. One of these exceptions is the discretionary function exception, which states that the FTCA is not applicable to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "Where this discretionary function exception applies, the courts lack federal subject matter jurisdiction." *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012).

Determining whether the exception applies involves a two-part inquiry. First, because the exception only covers "acts that are discretionary in nature," the court must determine whether the acts at issue "involve an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). An act is not discretionary if a "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

Then, if the court determines that "the challenged conduct involves an element of judgment," the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23. "Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy," the exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323. In its analysis under this prong, the court should not focus on the "agent's subjective intent" but "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009) (quoting *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993)). For example, where an employee drives a car in connection "with his official duties and negligently collide[s] with another car, the exception would not apply." *Gaubert*, 499 U.S. at 325 n.7. "Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." *Id.* Importantly, where a statute or regulation "permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d at 180 (internal quotations omitted).

"In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537. In an FTCA case, the plaintiff has the "burden to prove an

unequivocal waiver of sovereign immunity and the existence of subject matter jurisdiction."

*LeRose v. United States*, 285 F. App'x 93, 96 (4th Cir. 2008).

**B. Design and Construction of the Commissary's Walk-in Cooler**

The Defense Commissary Agency (DeCA), is a federal agency affiliated with the U.S. Department of Defense. *See* 32 C.F.R. § 383a.1. The mission of the DeCA is to:

> (1) Provide an efficient and effective worldwide system of commissaries for the resale of groceries and household supplies at the lowest practical price (consistent with quality) to members of the Military Services, their families, and other authorized patrons, while maintaining high standards for quality, facilities, products, and service.
>
> (2) Provide a peacetime training environment for food supply logisticians needed in wartime and, as circumstances dictate, troop issue subsistence support to military dining facilities consistent with Service needs.

32 C.F.R. § 383a.3. The DeCA must, among other things, "[p]lan, program, budget, design, manage, and ensure the execution of the commissary facilities' construction, modification, and repair programs" and "[p]rovide and operate facilities under standards consistent with those used for commercial food stores." 32 C.F.R. §383a.5. John Stuit, a General Engineer for DeCA's Design & Construction Division, has testified that the walk-in dairy cooler at issue "followed DeCA's Design Criteria." (Dkt. No. 45-4 at 1, 5).

Turning the first prong under *Berkovitz* and *Gaubert*, the Court finds that the design and construction of the walk-in cooler is discretionary in nature. The design and construction of such a cooler entails an "element of judgment." Indeed, the DeCA contracted with a Design Architect and Engineer to assist in the design and construction. (*See* Dkt. No. 45-1). Plaintiff argues that the Occupational Safety & Health Administration's (OSHA) standards apply and remove any discretion the DeCA had. (Dkt. No. 52 at 5). Specifically, Plaintiff points to the "General Duty

Clause," which states that each employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a). This statute, however, does not "*specifically* prescribe[] a course of action for an employee to follow" in designing walk-in coolers such that "the employee has no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 322 (emphasis added).

In *Gotha*, the decision relied on by Plaintiff, the OSHA regulation at issue provided that an employer must provide a "safe means of egress from fire and like emergencies" and defined "egress" as "a continuous and unobstructed way of exit travel from any point in a building or structure to a public way and consists of three separate and distinct parts: the way of exit access, the exit, and the way of exit discharge." *Gotha v. United States*, 929 F. Supp. 207, 213 (D.V.I. 1996), *rev'd*, 115 F.3d 176 (3d Cir. 1997). In stating that "[i]f the OSHA regulations did apply, then the Navy could not rely on the discretionary function exception," the Third Circuit was referring to regulations that dictated a much more specific course of action than the General Duty Clause provides.[4] *See id.* The Court does not find *Gotha*'s statement applicable to the General Duty Clause.

The Court finds the Fourth Circuit's decision in *Kelly v. United States* more on point. 120 F.3d 261 (table), 1997 WL 419268 (4th Cir. 1997). There federal regulations provided that the property at issue be "structurally sound, functionally adequate, in good repair, and safe," with "safe" meaning "a hazard does not exists that would endanger the safety of dwelling occupants."

---

[4] Notably, the district court found that these regulations did not apply to the conduct at issue, 929 F. Supp. at 213, and the Third Circuit affirmed this holding. 155 F.3d at 181.

*Id.* at *1 (internal quotations omitted). The Fourth Circuit found that "[b]ecause the regulations do not contain specific standards or mandate a certain defined level of safety or adequacy, the FmHA officials have to make choices and exercise their judgment in determining whether houses meet the general standards expressed in the regulations. These decisions, therefore, are discretionary." *Id.* Likewise, the General Duty Clause does not "contain specific standards or mandate a certain defined level of safety or adequacy" and official must exercise their judgment in determining whether "the general standards expressed" in the clause are met. Thus, the design and construction of the walk-in cooler is discretionary.

Next, Plaintiff argues that Marine Corps Safety Program Order 5100.29B removes DeCA's discretion in the design and construction of walk-in coolers. (Dkt. No. 52 at 5). Specifically, Plaintiff relies on the statement in this order that "[c]ommands at all levels shall establish and maintain a vibrant and viable safety program where maintaining combat readiness, eliminating preventable mishaps, and preserving our most precious assets – our Marines, Sailors, civilian personnel and equipment – is every Marine's goal and responsibility." (Dkt. No. 52-2 at 16-17). As an initial matter, it is not clear that this program would apply to the Commissary. (*See* Dkt. No. 52-2 at 17 ("The Marine Corps Safety Program shall apply to military-unique equipment, systems, operations, or workplaces . . .")). However, even assuming that it does, the statement relied on by Plaintiff requires the establishment of a safety program but does not otherwise provide any specific course of action. It certainly does not direct a specific course of action with regard to the design and construction of walk-in coolers. Therefore, the Court finds the first prong of *Gaubert* met.

Having found the conduct discretionary, the Court must now determine whether the DeCA's decisions regarding the design and construction of walk-in coolers are "based on considerations of public policy." The Court finds that they are. The applicable regulations require the DeCA to balance efficiency, providing the "lowest practical price," and "maintaining high standards for quality, facilities, products, and service." 32 C.F.R. § 383a.3. Such considerations necessarily involve trade-offs in the design and construction of commissaries and its components. Furthermore, the regulations provide DeCA with discretion on how to "[p]lan, program, budget, design, manage, and ensure the execution of the commissary facilities' construction, modification, and repair programs." 32 C.F.R. § 383a.5. Where a regulation "permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Indem. Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009); *accord Gaubert*, 499 U.S. at 324 ("When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."). Therefore, the Court finds that the Court lacks subject matter jurisdiction over Plaintiff's claims based on the design and construction of the walk-in cooler at issue.

**C. Mats and Other Slip-Resistant Material**

The Court finds that the decision as to whether to use mats or other slip-resistant material in the walk-in cooler "involve[s] an element of judgment or choice." *Gaubert*, 499 U.S. at 322. Indeed, the Government has provided an affidavit from a DeCA Commissary Management Specialist in Grocery Operations detailing reasons why mats should not be used, including

sanitation issues and the possibility that mats could create an uneven surface causing injury. (Dkt. No. 45-3).

Under the second prong, however, the Court finds, that this decision is not based on considerations of public policy. While the design and construction of commissaries entail the balancing of public policy issues, most obviously budgetary concerns, the decision on whether and where to place relatively inexpensive mats does not. *See Duke v. Dep't of Agric.*, 131 F.3d 1407, 1412 (10th Cir. 1997) (finding discretionary exception did not apply where, among other things, "[a] warning sign . . . would cost little"). While the allocation of major resources is a matter of public policy, *see Ayres v. Mayor & City Council of D.C.*, 317 F. App'x 307, 311 (4th Cir. 2008), "the mere presence of choice–even if that choice involves whether money should be spent–does not trigger the discretionary function exemption." *KiSKA Const. Corp. v. Washington Metro. Area Transit Auth.*, 321 F.3d 1151, 1161 (D.C. Cir. 2003). To hold otherwise would result in the "the exception swallowing the rule." *Id.*

The Court cannot "perceive in the record before it any significant social, economic or political policy in the action or inaction" of placing mats on a cooler floor.[5] *Id.* at 1412. It is a "mundane, administrative, garden-variety, housekeeping problem" of the type Congress meant to address with the FTCA. *Gotha v. United States*, 115 F.3d 176, 181 (3d Cir. 1997); *see also Cestonaro v. United States*, 211 F.3d 749, 755 (3d Cir. 2000) ("[T]orts stemming from garden variety decisions fall outside the discretionary function exception," as "is consistent with a

---

[5] The Government argues that "the use of mats in the walk-in dairy cooler is not warranted." (Dkt. No. 45 at 12). The issue of negligence, however, is irrelevant to the discretionary function inquiry. (*See* Dkt. No. 59 at 5 (citing cases)).

primary motive behind the FTCA."). Therefore, the Court denies the Government's motion to dismiss this claim.

## IV. Independent Contractor Exception

DeCA entered into an agreement with Nelson Refrigeration, Inc. ("Nelson") to provide "commissary facility maintenance" for "up to 180 DeCA commissaries, cold storage, and distribution facilities in the United States and US Territories." (Dkt. No. 45-2 at 8). This contract provides, among other things, that Nelson will inspect walk-in coolers on a monthly basis. (*Id*. at 18-19). During this monthly inspection, Nelson must, among other things, "[i]nspect flooring materials for condition and report any items that require repair," "replace any burdened out light bulbs, damaged lamp sockets and ballasts," and "prepare a report noting deficiencies and provide specific recommendations for repairs and preventive maintenance." (*Id*.). "[C]ustodial services" is explicitly excluded from the contract. (*Id*. at 10). The Government contends that because it contracted with Nelson for these services, it cannot be held liable for any failure to properly and timely inspect the floor and lighting in the walk-in dairy cooler. (Dkt. No. 45 at 15-17). The Court disagrees.

Under the FTCA, "Congress has not waived the sovereign immunity of the United States for injuries resulting from the actions of independent contractors performing work for the government." *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996) (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)). There is no dispute that Nelson is an independent contractor. Thus, the Government cannot be held liable for any negligence on the part of Nelson. However, the Government can be liable for its own negligent failure to properly and timely inspect the walk-in cooler. *See Berkman v. United States*, 957 F.2d 108, 114 (4th Cir. 1992)

("The fact that an independent contractor may have been responsible for [plaintiff's injury], however, cannot be viewed as relieving the United States from liability where the plaintiff alleges that federal employees also may have caused or contributed to the alleged tort.").

The Government relies on *Williams v. United States*, 50 F.3d 299 (4th Cir. 1995). In *Williams*, the independent contractor "was responsible for the *daily* operations of the [p]remises." *Id.* at 307 (emphasis added). "[T]he United States neither supervised nor controlled the *day-to-day* operations *or the custodial duties.*" *Id.* (emphasis added). Under the contract, the contractor was responsible for "ensuring that the floors were free of debris and slip-resistant." *Id.* Thus, the Fourth Circuit held that the conduct at issue was "embraced by the overarching decision to engage" a contractor for these purposes, and the Government could not be liable. *Id.* at 310. Here, however, custodial services and daily operations were *not* part of Nelson's responsibilities. Nelson's only responsibility was a *monthly* inspection. To the extent that an inspection of the premises, its lighting, or floor hazards should have been conducted more than once a month, the failure to do so is a claim against the Government, not Nelson. Because the contract "did not, by its terms, delegate these allegedly causative tasks to [Nelson]," Plaintiff has alleged a claim against the Government. *Berkman*, 957 F.2d at 114.

### V. Conclusion

The Government's partial motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 45) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims based on the design and construction of the walk-in cooler is **DISMISSED** for lack of subject matter jurisdiction. The Government's motion is otherwise **DENIED**.

//

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Judge

August 14, 2015
Charleston, South Carolina